Raymond J. Tittmann, No. 191298
Jodi K. Swick, No. 228634
**EDISON, McDOWELL & HETHERINGTON LLP**
1 Kaiser Plaza, Suite 1010
Oakland, California 94612
Telephone: (510) 628-2145
Facsimile: (510) 628-2146
Email:    raymond.tittmann@emhllp.com
          jodi.swick@emhllp.com

Attorneys for Plaintiff
TAYLOR & LIEBERMAN,
an Accountancy Corporation

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| TAYLOR AND LIEBERMAN, AN ACCOUNTANCY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, a corporation,<br><br>Defendant. | Case No. 2:14-cv-03608<br><br>**TAYLOR AND LIEBERMAN'S COMPLAINT FOR BREACH OF CONTRACT AGAINST FEDERAL INSURANCE CO.** |

Plaintiff Taylor and Lieberman, An Accountancy Corporation ("Taylor & Lieberman") complains against Defendant Federal Insurance Company ("Federal Insurance") as follows:

**PARTIES**

1.     Plaintiff Taylor & Lieberman is a corporation incorporated in the State of California and is a citizen of California with a business address of 10866 Wilshire Blvd. #1100, Los Angeles, California 90024.

2.     Defendant Federal Insurance is a corporation incorporated in the State of Indiana and is also a citizen of New Jersey with a principal place of business at 15 Mountain View Road, Warren, New Jersey 07059; it conducts business in Los Angeles County.

**JURISDICTION AND VENUE**

3.     This court has jurisdiction of the subject matter under 28 U.S.C. §1332(a)(1) because the controversy is between citizens of different states and involves more than $75,000.00 exclusive of interest and costs.

4.     Venue is proper because a substantial part of the events occurred in this district of Los Angeles County, in the Central District of California and Defendant Federal Insurance transacts business in Los Angeles, California.

**GENERAL ALLEGATIONS**

5.      Taylor & Lieberman, an accounting firm, performs services for the client in question in the areas of business management, account oversight, tax planning & preparation, and financial planning.

6.     Part of the business management responsibilities included control over the client's financial accounts with full power and authority to issue payments and transfer funds under specified circumstances.  Taylor & Lieberman has a power of attorney over the client's funds. Bills are sent to Taylor & Lieberman and the firm writes checks on the account. The firm also has full authority for wire transfers and online checking on the account.

7.     Prior to the loss, Taylor & Lieberman purchased from Federal Insurance a Forefront Portfolio Policy No. 8224-0280 effective June 29, 2011 to June 29, 2012 (the "Policy").  A true and correct copy is attached as Exhibit A.

8.     During the time when the loss occurred, the Policy was in full force and effect, without any lapse in payment of premiums.

9.     The Policy provides first-party crime coverage, which was supposed to protect Taylor & Lieberman from losses suffered as a result of a crime.  Unfortunately, Taylor &

**TAYLOR AND LIEBERMAN'S COMPLAINT FOR BREACH OF CONTRACT AGAINST FEDERAL INSURANCE CO**

Lieberman suffered from a crime, and yet Federal Insurance has refused to abide by its coverage obligations, leaving Taylor & Lieberman with no choice but to pursue this litigation, incurring all fees and costs associated therewith.

10.     On or before June 4, 2012, a perpetrator fraudulently obtained control of the client's email account.  Purporting to be the client, the perpetrator then emailed fraudulent payment instructions to Taylor & Lieberman's computer email account on or about June 4, 2012.

11.     Taylor & Lieberman therefore received an email from a client's email address requesting a wire transfer of $94,280.00 to be sent to an account at Maybank in Malaysia.

12.     The email was signed with the client's name typed at the end of the email.

13.     Taylor & Lieberman believed these instructions to be from the client, and had no knowledge of the fraudulent signature and instructions.  The wire was completed and an email acknowledging the transfer was sent to the client.

14.     On or about June 5, 2012, Taylor & Lieberman received another email from the same client's email address requesting an additional wire transfer of $98,485.90 to be sent to an account at United Overseas Bank in Singapore.

15.     The June 5 email was again signed with the client's name at the end of the email.

16.     The wire was completed and an email acknowledging the transfer was sent to the client.

17.     On or about June 8, 2012, Taylor & Lieberman received a third email purportedly from the same client, however from a different email address that was not the client's correct email address.  This email requested a wire transfer of $128,101.00 to be sent to an account at Hong Leong Bank in Malaysia.  Because a different email address other than the clients was used, a call was placed by Taylor & Lieberman to the actual client and the fraudulent scheme was discovered.  The third wire was not completed.

18.     Taylor & Lieberman immediately sought to recover the first two wire transactions as well, and was able to recover $93,331.98 of the first transfer, but none of the second transfer.

19.     The fraudulent transfers therefore amounted to a total loss of $99,433.92 – $948.02 on the first transfer and $98,485.90 on the second transfer,

20.     Accordingly, Taylor & Lieberman was damaged in the amount of $99,433.92.

21.     On or about June 11, 2012, the loss was tendered under the crime coverage of the Policy.

22.     On or about June 13, 2012, Federal Insurance determined that coverage was not afforded for this loss and thereby declined coverage.  Despite repeated correspondence, Federal Insurance has persisted in that denial.

23.     Coverage is afforded under at least three sections of the Policy: Coverage D (Forgery), Coverage E (Computer Fraud), and Coverage F (Funds Transfer Fraud). Bolded text below indicates the term is defined in the Policy.

### Forgery Coverage

24.     The insuring language of Coverage D (Forgery) provides:

> (D) **Forgery Coverage**
>
> The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**.

25.     Under Definition II(M), "**Forgery** means the signing of another natural person's name with the intent to deceive, but does not mean a signature that includes one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures."

26.     Here, the perpetrator did exactly what is described in the insuring language. The perpetrator electronically presented himself in the name of a different person, Taylor

-4-

& Lieberman's client, and then electronically and fraudulently signed the name of that client via email with instructions to transfer funds, all for the purpose of deceiving Taylor & Lieberman into withdrawing money from its trust account.  Taylor & Lieberman suffered a direct loss as a consequence in the loss of funds from its trust account held for its client.

27.     On information and belief, Federal Insurance contends that the insuring language means that the "**Forgery**" is modified also by the phrase "of a **Financial Instrument**."  Consequently, Federal Insurance contends that Forgery alone is not covered unless the Forgery is "of a Financial Instrument."

28.     Federal Insurance's interpretation violates the "last antecedent rule" of construction, which provides as follows: "A longstanding rule of statutory construction — the 'last antecedent rule' — provides that 'qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote.'"  *White v. County of Sacramento*, 31 Cal. 3d 676, 680 (1982).

29.     Under this rule, the phrase "of a Financial Instrument" modifies only the last antecedent in the series, "alteration."  In other words, under this rule of construction, loss resulting from either (a) "**Forgery**" *or* (b) "alteration of a **Financial Instrument**" triggers coverage.

30.     Taylor & Lieberman reasonably anticipated that it had coverage for Forgery, as the coverage section in question is titled "Forgery Coverage."  It reasonably did not expect that the "Forgery coverage" was further limited to that "of a Financial Instrument."

31.     At a bare minimum, both interpretations are reasonable, yielding an ambiguity that must be construed in favor of coverage.  *See, e.g.*, *Lakeland Village Homeowners Ass'n v. Great American Ins.*, 727 F.Supp.2d 887, (E.D. Cal. 2010) ("the grammatical 'Rule of the Last Antecedent' rendered the clause subject to more than one reasonable interpretation"; "Since the clause … is reasonably susceptible to more than one

interpretation, it is ambiguous and must be construed in [the insured's] favor") (citing *New Castle County, Delaware v. National Union Fire Ins. Co. of Pittsburgh, PA*, 174 F.3d 338, 344–351 (3rd Cir.1999)).

## Computer Fraud Coverage

32.     The insuring language of Coverage E (Computer Fraud) provides:

> The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Computer Fraud** committed by a **Third Party**.

33.     Under Definition II(C), "**Computer Fraud** means the unlawful taking of **Money**, **Securities** or **Property** resulting from a **Computer Violation**."

34.     Under Definition II(E), "**Computer Violation** means an unauthorized:

1) entry into or deletion of data from a **Computer System**;

2) change to data elements or program logic of a **Computer System**, which  is kept in machine readable format; or

3) introduction of instructions, programmatic or otherwise, which propagate themselves through  a **Computer System**;

directed solely against  any **Insured Organization**."

35.     Under Endorsement/Rider No. 2, "**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are:

a)     owned and operated by an **Insured Organization**;

b)     leased and operated by an **Insured Organization**; or

c)     utilized by an **Insured Organization**."

36.     The perpetrator here accomplished precisely what is described in subparagraph (3) of the definition of Computer Violation: he or she introduced fraudulent instructions via email to transfer funds, which instructions were directed solely against Taylor & Lieberman and propagated through Taylor & Lieberman's computer system to its

**TAYLOR AND LIEBERMAN'S COMPLAINT FOR BREACH OF CONTRACT AGAINST FEDERAL INSURANCE CO**

1    personnel responsible for the account.  The perpetrator thereby unlawfully took money

2    from Taylor & Lieberman's trust account.

3         37.    The fraudulent transfer also falls under the language of subparagraph (1), as the

4    perpetrator entered data into Taylor & Lieberman's computer system by sending

5    instructions to pay specified sums into Taylor & Lieberman's computer e-mail system.

6         38.    The Policy language here does not distinguish between sending the instruction

7    into Taylor & Lieberman's system by email or hacking the Taylor & Lieberman's system.

8    The term "entry of data" is broad and undefined.  Thus, sending email instructions into

9    Taylor & Lieberman's computer system to wire a specified dollar amount satisfies the

10   Policy language of subparagraph (1).

11                            **Funds Transfer Fraud Coverage**

12        39.    The insuring language of Coverage F (Funds Transfer Fraud) provides:

13               The **Company** shall pay the **Parent Corporation** for direct loss

14                    sustained by an **Insured** resulting from **Funds Transfer Fraud**

15                    committed by a **Third Party**.

16        40.    Under Definition II(N) "**Funds Transfer Fraud** means fraudulent written,

17   electronic, telegraphic, cable, teletype, or telephone instructions issued to a financial

18   institution directing such institution to transfer, pay or deliver **Money** or **Securities** from

19   any account maintained by an **Insured Organization** at such institution, without an

20   **Insured Organization's** knowledge or consent."

21        41.    On information and belief, Federal Insurance contends that Taylor &

22   Lieberman's knowledge of the instruction to transfer defeats coverage, even though it did

23   not know that the instruction was fraudulent.

24        42.    Federal Insurance's interpretation disregards the modifier "fraudulent."  It is

25   not any transfer of money that triggers coverage, but a fraudulent transfer.  Likewise, it is

26   not knowledge of any transfer that would defeat coverage, but knowledge of the

27   fraudulent transfer.  This is the only reasonable interpretation.

28

**TAYLOR AND LIEBERMAN'S COMPLAINT FOR BREACH OF CONTRACT AGAINST FEDERAL INSURANCE CO**

43.     At the very minimum, the language is sufficiently ambiguous to provide coverage consistent with the reasonable expectations of the insured.

44.     Taylor & Lieberman did not know the instruction was fraudulent, thus satisfying the language of Coverage E.

45.     On information and belief, Federal Insurance also contends that Taylor & Lieberman, an accounting firm, is not a financial institution. Financial institution is not a defined term and there is no basis in the policy to exclude accounting firms. In this case, for example, Taylor & Lieberman was handling the financial accounts of its client, including the holding, handling, control, and transfer of the very funds at issue in this matter.

### The Exclusions Do Not Apply

46.     On information and belief, Federal Insurance also contends the following exclusions apply:

> (A) No coverage will be available under this Coverage Section for: (7) indirect or consequential loss of any kind; … (12) loss due to an **Insured** knowingly having given or surrendered **Money**, **Securities** or **Property** in any exchange or purchase with a **Third Party**, not in collusion with an **Employee** ….

47.     Exclusion (A)(7) does not apply because the loss is not indirect or consequential because this was a client account in the control and trust of Taylor & Lieberman. The Ninth Circuit previously ruled against Federal Insurance on this issue in *Vans Cos. v. Federal Ins. Co.*, 212 F.3d 489, 491 (9th Cir. 2009):

> A direct loss to [the policyholder] may, of course, be caused by its employee's theft of property for which it is legally liable, the typical case being where the insured is a bailee or trustee of property.

48.     Taylor & Lieberman has a power of attorney over the account, with full discretion and authority to make payments. Therefore, as a trustee, the theft of funds does constitute a "direct loss" under *Vans*, rendering this exclusion inapplicable.

-8-

**TAYLOR AND LIEBERMAN'S COMPLAINT FOR BREACH OF CONTRACT AGAINST FEDERAL INSURANCE CO**

49.     Further, as trustee, Taylor & Lieberman was required to and did make the client whole as to all losses suffered in this matter.

50.     Exclusion (A)(12) does not apply because Taylor & Lieberman did not knowingly surrender money "in an exchange or purchase" with the Third Party. There was no exchange or purchase, but rather simply an instruction to release funds. The exclusion is directed at a purchase of a product or service for purported consideration that is deemed a fraud – that is not the case here.

51.     Therefore neither exclusion applies.

52.     Wherefore, Taylor & Lieberman asserts the following cause of action.

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

53.     Taylor & Lieberman re-alleges and incorporates by reference paragraphs 1 through 52 as set forth in full.

54.     As pled herein, Taylor & Lieberman and Federal Insurance have entered into a written contract, the Policy (Ex. A), which provides insurance coverage relating to the fraudulent transfers at issue. The Policy provides insurance coverage in the event crimes like fraud and/or forgery are committed against Taylor & Lieberman.

55.     Taylor & Lieberman has complied with all of the terms and conditions of the Policy, and has performed each and every obligation required under the Policy, including payment of all premiums due. The policy was in full force and effect at all relevant times.

56.     Within a reasonable time after the loss, Taylor & Lieberman provided notice of the covered loss, and requested that Federal Insurance provide Taylor & Lieberman the benefits due under the policy.

57.     Federal Insurance breached the terms of the Policy by unreasonably refusing to pay Taylor & Lieberman its benefits under the terms of the Policy, and by withholding all owed benefits due and payable, under the terms of the Policy.

**TAYLOR AND LIEBERMAN'S COMPLAINT FOR BREACH OF CONTRACT AGAINST FEDERAL INSURANCE CO**

1    58.    Federal Insurance further breached its obligations under the Policy by not

2  engaging in a full and adequate investigation of Taylor & Lieberman's claim, and forcing

3  Taylor & Lieberman to institute this litigation to obtain its benefits.

4    59.    As a direct and proximate result of the action of Federal Insurance, Taylor &

5  Lieberman has suffered damages in an amount to be proved at trial.

6                              **PRAYER FOR RELIEF**

7  Wherefore, Taylor & Lieberman requests for judgment as follows:

8  As to All Causes of Action:

9  1.    Actual and compensatory damages;

10  2.    Prejudgment interest;

11  3.    Incidental and consequential damages;

12  4.    Costs of suit;

13  5.    Other relief the court deems proper.

14  6.    General damages in an amount to be proved at trial.

15

16  Dated: May 9, 2014

17                    EDISON, MCDOWELL & HETHERINGTON LLP

18                        By:  /s/ Raymond J. Tittmann

19                            Raymond J. Tittmann
                              Jodi K. Swick
20

21                            Attorneys for Plaintiff
                              TAYLOR & LIEBERMAN
22

23

24

25

26

27

28

-10-