1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  TAYLOR AND LIEBERMAN, an      )  CV 14-3608 RSWL (SHx)
    Accountancy Corporation.,     )
12                                )  **ORDER Re: Cross Motions**
                       Plaintiff, )  **for Summary Judgment on**
13                                )  **all Claims and Partial**
          v.                      )  **Summary Judgment on Some**
14                                )  **Claims**
    FEDERAL INSURANCE COMPANY,    )
15  a corporation,                )
                                  )
16                     Defendant. )
                                  )
17  ─────────────────────────────)

18       The instant cross-motions for summary judgment

19  arise from Plaintiff Taylor and Lieberman's

20  ("Plaintiff" or "T&L") Motion for Partial Summary

21  Judgment [22] and Defendant Federal Insurance Company's

22  ("Defendant" or "FIC") Motion for Summary Judgment

23  [23].  The Court, having reviewed all papers submitted

24  pertaining to this Motion and having considered all

25  arguments presented to the Court, **NOW FINDS AND RULES**

26  **AS FOLLOWS**:

27       The Court **GRANTS** Defendant's Motion for Summary

28  Judgment [23] in its entirety. The Court **DENIES** [22]

1  Plaintiff's Motion for Summary Judgment in its

2  entirety.

3                **I.   UNCONTROVERTED FACTS**

4      This action stems from Plaintiff's claim against

5  Defendant for breach of an insurance coverage contract.

6  Both Plaintiff and Defendant agree that this case is

7  appropriate for summary judgment, and that because this

8  is a case of contract interpretation it must therefore

9  be decided as a matter of law.  The uncontroverted

10 facts in this cross motion for summary judgment are as

11 follows.  Plaintiff Taylor & Lieberman is an accounting

12 firm that performs services such as business

13 management, account oversight, and tax planning and

14 preparation various clients, including the client that

15 was the victim of the fraudulent activity that led to

16 this litigation {"Client").  Parties' Joint Stipulation

17 of Uncontroverted Facts, 2:1-3.  Part of Plaintiff's

18 business management responsibilities included managing

19 Client's financial accounts by issuing payments,

20 transferring funds, having Power of Attorney (held by

21 Edward Lieberman as the Principal) over funds, writing

22 checks and wiring transfers.  Id. at 2:4-8.  Plaintiff

23 purchased a Forefront Portfolio Policy ("the Policy")

24 from Defendant Federal Insurance Company prior to the

25 incident at issue.  Id. at 2:9-11.  The Policy was in

26 effect from June 29, 2011 to June 29, 2012 no lapse in

27 payments.  Id.

28     The dispute arises from a perpetrator fraudulently

1  taking hold of Client's email account and sending wire
2  payment instructions via that email address to the
3  email account of Plaintiff's employee, Ms. Miller, on
4  or about June 4, 2012.  Id. at 2:14-22.  The requested
5  wire transfer was to an account at Maybank in Malaysia
6  in the amount of $94,280.00.  Id.  The email sent to
7  Ms. Miller's email account was signed with Client's
8  name typed at the end of the email.  Id.  Ms. Miller
9  believed the instructions to be from Client, so she
10 requested the transfer and sent a confirmation email to
11 Client.  Id.

12     Ms. Miller subsequently received another email from
13 the same Client's email address on June 5, 2012,
14 requesting that additional funds in the amount of
15 $98,485.90 be wired to the United Overseas Bank in
16 Singapore.  Id. at 2:25-3:3.  This email was also
17 signed with Client's name typed at the bottom.  Id.
18 The wire transfer was once again completed, and a
19 confirmation was sent to Client's email address.  Id.

20     Ms. Miller received a third email request for the
21 wiring of $128,101.00, purportedly from Client, but
22 from a different email address.  Id. at 3:6-10.  The
23 email instructed Ms. Miller to wire the funds to Hong
24 Leong Bank in Malaysia.  Id.  Ms. Miller was tipped off
25 by the different email address, and placed a call to
26 Client to confirm.  Id.  It was at this time that the
27 fraudulent scheme was discovered, and the third
28 transfer was not completed.  Id.

Plaintiff immediately tried to recover the first two transfers, and was able to get $93,331.98 back from the first transfer. Id. at 3:12-16. Plaintiff was unable to recover anything from the second transfer. Id. Thus, Plaintiff's add up to $99,433.92 after Client withdrew its funds ($948.02 that were unrecoverable from the first transfer, plus $98,485.90 from the second transfer). Id.

On June 11, 2012, Plaintiff tendered this loss under the crime coverage of the Policy. Id. at 3:17-19. On June 13, 2012, Defendant determined that coverage was not afforded for this loss and denied the claim. Id.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The evidence, and any inferences based on underlying facts, must be viewed in a light most favorable to the opposing party. Diaz v. American Tel. & Tel., 752 F.2d 1356, 1358 n.1 (9th Cir. 1985).

Where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party

1  may meet its burden for summary judgment by showing an

2  "absence of evidence" to support the non-moving party's

3  case.  Celotex v. Catrett, 477 U.S. 317, 325 (1986).

4        The non-moving party, on the other hand, is

5  required by Federal Rule of Civil Procedure 56(e) to go

6  beyond the pleadings and designate specific facts

7  showing that there is a genuine issue for trial.  Id.

8  at 324.  Conclusory allegations unsupported by factual

9  allegations, however, are insufficient to create a

10 triable issue of fact so as to preclude summary

11 judgment.  Hansen v. United States, 7 F.3d 137, 138

12 (9th Cir. 1993) (citing Marks v. Dep't of Justice, 578

13 F.2d 261, 263 (9th Cir. 1978)).  A non-moving party who

14 has the burden of proof at trial must present enough

15 evidence that a "fair-minded jury could return a

16 verdict for the [opposing party] on the evidence

17 presented."  Anderson, 477 U.S. at 255.  In ruling on a

18 motion for summary judgment, the Court's function is

19 not to weigh the evidence, but only to determine if a

20 genuine issue of material fact exists.  Id.

21 **B.  Analysis**

22       Plaintiff, as the insured, has the burden of

23 proving coverage under the Policy.  FDIC v. New

24 Hampshire Ins. Co., 953 F.2d 478, 483-485 (9th Cir.

25 1992).  Plaintiff argues that Defendant breached their

26 contract because the Policy should have been honored

27 under each of three different sections.  Pl.'s Mot.

28 1:15-17.  These sections are as follows: Forgery

Coverage (Coverage D), because the email constitutes a
forged signature (Mot. 1:23-27); Computer Fraud
Coverage (Coverage E), because the email sent to
Plaintiff constitutes a computer violation (Mot. 1:28-
2:2); and Funds Transfer Coverage (Coverage F), because
Plaintiff is a financial institution per a policy
covering "fraudulent written electronic instructions
issued to a financial institution" (Mot. 2:7-8).

   The relevant coverage provisions, stated in full,
are as follows:

   • Forgery Coverage: "The Company shall pay the
   **Parent Corporation** for direct loss sustained by an
   **Insured** resulting from **Forgery** or alteration of a
   **Financial Instrument** committed by a **Third Party.**"
   Parties Stipulation of Facts Ex. B at 37 (emphasis
   in original).

   • Computer Fraud Coverage: "The **Company** shall pay
   the **Parent Corporation** for direct loss sustained by
   an **Insured** resulting from **Computer Fraud** committed
   by a **Third Party.**"  Parties Stipulation of Facts
   Ex. B at 37 (emphasis in original).

   • Funds Transfer Fraud Coverage: The **Company** shall
   pay the **Parent Corporation** for direct loss
   sustained by an **Insured** resulting from **Funds
   Transfer Fraud** committed by a **Third Party.** Parties
   Stipulation of Facts Ex. B at 37. (emphasis in
   original).

Each of the bold terms is further defined in the

6

Policy.   Accordingly, each potential basis for coverage
requires extensive analysis to determine whether or not
it applies to the unique facts presented by the
fraudulent activity.   While the Court is skeptical
about Plaintiff's right to coverage under each of the
above provisions, it is unnecessary for the Court to
perform this full analysis.   Each of the three
provisions above applies only to "direct loss sustained
by an Insured."   For the reasons discussed below,
Plaintiff's losses do not, as a matter of law,
constitute direct loss.

     To summarize, Defendant argues that Plaintiff does
not show that it suffered a direct loss because the e-
mails did not immediately and without intervening cause
result in a loss.   Def.'s Mot.  2:24-28.   In fact,
argues Defendant, Plaintiff's loss only occurred after
the bank was unable to recover all of the lost funds
and the Client demanded payment from Plaintiff.   <u>Id.</u>
In essence, Plaintiff is attempting to recover for a
third-party loss.

     A common use interpretation of direct loss provides
that a loss is not direct unless it follows immediately
and without intervening space, time, agency, or
instrumentality.   <u>Tooling, Mfg. & Techs. Ass'n v.</u>
<u>Hartford Fire Ins. Co.</u>, 693 F.3d 665, 674 (6th Cir.
2012) (hereinafter "TMA").   This principle has resulted
in differing approaches among the circuit courts, but
most courts, including those in this Circuit, have

indicated that *liability policies* may require an
insurer to discharge an obligation of the insured to a
third party for some act of the insured or its
employee, while *indemnity policies* may not.[1]  See <u>id.</u>;
<u>see also</u> <u>Vons Companies, Inc. v. Fed. Ins. Co.</u>, 57 F.
Supp. 2d 933, 943 (C.D. Cal. 1998) <u>aff'd</u>, 212 F.3d 489
(9th Cir. 2000); <u>Simon Mktg. v. Gulf Ins.</u>, 149
Cal.App.4th 616, 623 (2007); <u>Valley Cmty. Bank v.
Progressive Cas. Ins. Co.</u>, 854 F.Supp.2d 697, 709
(N.D.Cal.2012); <u>Citizens Bank & Trust Co. v. St. Paul
Mercury Ins. Co.</u>, No. CV305-167, 2007 WL 4973847, at
*3-5 (S.D. Ga. Sept. 14, 2007); <u>Fireman's Fund Ins. Co.
v. Special Olympics Int'l, Inc.</u>, 249 F. Supp. 2d 19, 27
(D. Mass.) <u>aff'd on other grounds</u>, 346 F.3d 259 (1st
Cir. 2003); <u>Lynch Props., Inc. v. Potomac Ins. Co. of
Ill.</u>, 140 F.3d 622, 629 (5th Cir. 1998); <u>Direct Mort.
Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>,
625 F. Supp. 2d 1171, 1176 (D. Utah 2008); <u>Tri City
Nat. Bank v. Fed. Ins. Co.</u>, 2004 WI App 12, at *801-02
(2003).

---

[1]Many of these cases differentiate between "employee
fidelity" policies, which constitute indemnity provisions that
exclude third party liability, and liability policies which
include third party liability.  See Armbrust Int'l, Ltd. v.
Travelers Cas. & Sur. Co. of Am., No. C.A. 04-212 ML, 2006 WL
1207659, at *8 (D.R.I. May 1, 2006) ("The policies cover injury
to the insured, not a third party, a fact which significantly
differentiates them from liability policies, which, as a rule,
indemnify an insured against losses to a third party.").  While
the provisions at issue here are not employee fidelity policies,
they are, for reasons discussed above, sufficiently similar that
the case law is persuasive.

1    The Court concludes that the policies at issue in
2    the instant case should be analyzed similarly to
3    indemnity policies that do not provide third-party
4    coverage instead of liability policies that do provide
5    third party coverage, and that as such, Plaintiff has
6    not suffered a "direct loss."   A reading of the Policy
7    indicates that the parties contracted to have liability
8    coverage for certain events and indemnity-type coverage
9    for other events.   The liability coverage sections of
10   the Policy are expressly delineated as such and are
11   separated in an entirely different document than the
12   provisions of the Policy that Plaintiff claims cover
13   its losses in this case.   See Parties' Stipulation of
14   Facts Ex. B at 13-26, 35-49.   Further, the section that
15   contains the relevant provisions of the Policy, when
16   read in combination with the other provisions in that
17   section, more likely contemplates fraudulent violations
18   against Plaintiff that result in a "direct loss" of
19   Plaintiff's own money–not fraudulent violations upon
20   which Plaintiff relies that result in a loss of a
21   client's money, which Plaintiff wants Defendant to
22   reimburse.   For example, the section of the Policy in
23   question also contains coverage for employee theft,
24   which is similar in nature to the "employee fidelity"
25   policies that have been comprehensively examined in the
26   long list of cases cited above.   In response to this
27   line of argument, Plaintiff contends that its power of
28   attorney over Client's funds was tantamount to a bailee

1  or trustee power over the funds, and cites <u>Vons</u>, 57 F.
2  Supp. 2d at 941, for the proposition that such a power
3  means that a direct loss occurs when the funds are the
4  subject of fraud.  Pl.'s Opp'n at 21:16-28.  Defendant
5  refutes this argument, contending that Plaintiff was
6  not a bailee or trustee of the funds because they were
7  held not with Plaintiff but in a separate City National
8  bank account, and because the Power of Attorney was not
9  granted to Plaintiff but instead to an individual
10  representative of Plaintiff.  Def.'s Reply at 18:24-
11  19:7 (citing <u>Alberts v. Am. Cas. Co.</u>, 88 Cal. App. 2d
12  891, 898-899 (1948) and <u>Aetna Cas. Sur. Co. v. Kidder,</u>
13  <u>Peabody & Co.</u>, 246 A.D.2d 202 (N.Y. App. Div. 1998).
14  The Court finds Defendant's reasoning more persuasive.
15  If the funds had been held in an account owned or
16  attributed to Plaintiff, such as an escrow account (<u>see</u>
17  <u>Fidelity Nat'l. v. Nat'l Union</u>, 2014 WL 4909103, at *10
18  (S.D. Cal. Sept. 30, 2014)) and a hacker had entered
19  into Plaintiff's computer system and been able to
20  withdraw funds such that Plaintiff's accounts were
21  immediately depleted, then Plaintiff would be correct
22  in asserting coverage from the Policy.  Here, however,
23  a series of far more remote circumstances occurred:
24  Client gave Plaintiff power of attorney over Client's
25  money held in Client's own account; a perpetrator of
26  fraud motivated Plaintiff's agent to use the power of
27  attorney to transfer funds out of Client's account;
28  Plaintiff discovered this fraud and attempted to

10

recover the funds; Client requested repayment of the
lost funds and Plaintiff obliged; Plaintiff now
requests Defendant indemnify it for the losses that
were transferred from Client to Plaintiff.  These are
not the circumstances that dictated the results in <u>Vons</u>
or <u>Fidelity</u>, and they are not the circumstances appear
to be within the contemplation of the Policy.  <u>See</u>
<u>Pestmaster Servs., Inc. v. Travelers Cas. & Sur. Co. of</u>
<u>Am.</u>, No. CV 13-5039-JFW MRWX, 2014 WL 3844627, at *8-10
(C.D. Cal. July 17, 2014) (no direct loss where a third
party obtained insured's approval to initiate
electronic funds transfers from insured's account and
then misused the transferred funds).  Accordingly,
Plaintiff has failed to meet its burden to show it is
entitled to coverage under the Policy.

### III.   CONCLUSION

    For the foregoing reasons, Defendant's Motion for
Summary Judgment shall be granted in its entirety, and
Plaintiff's Motion for Summary Judgment shall be denied
in its entirety.

    **IT IS SO ORDERED.**

DATED: June 18, 2015        RONALD S.W. LEW
                            **HONORABLE RONALD S.W. LEW**
                            Senior U.S. District Judge