**NOT FOR PUBLICATION**

FILED

MAR 9 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

TAYLOR & LIEBERMAN, An Accountancy Corporation,

Plaintiff-Appellant,

v.

FEDERAL INSURANCE COMPANY, a corporation,

Defendant-Appellee.

No. 15-56102

D.C. No.
2:14-cv-03608-RSWL-SH

MEMORANDUM [*]

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, District Judge, Presiding

Argued and Submitted February 13, 2017
Pasadena, California

Before: M. SMITH and OWENS, Circuit Judges, and KORMAN,[**] District Judge.

Taylor & Lieberman ("T&L") appeals from the district court's order granting Federal Insurance Company's ("FIC") motion for summary judgment. As the parties are familiar with the facts, we do not recount them here. We have

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

jurisdiction under 28 U.S.C. § 1291, and we affirm on other grounds.[1]

1. **There is no forgery coverage.** The policy provides coverage for an insured's direct loss "resulting from Forgery or alteration of a Financial Instrument by a Third Party." Relying on the "Last Antecedent Rule,"[2] T&L argues that the words "financial instrument" only limit coverage for an alteration, and that a covered forgery need not be of a financial instrument.

Not so. An exception to the last antecedent rule "provides that when several words are followed by a clause that applies as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 132 Cal. Rptr. 2d 151, 162 (Ct. App. 2003) (internal quotation marks omitted). Moreover, where, as here, a clause only has two antecedents, the force of the last antecedent rule "diminishes . . . in accordance with ordinary English usage." *Old Republic Constr. Program Grp. v. Boccardo Law Firm, Inc.*, 179 Cal. Rptr. 3d

[1] "[A] district court's grant of summary judgment may be affirmed if it is supported by any ground in the record, whether or not the district court relied upon that ground." *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 330 (9th Cir. 2017).

[2] Under this rule of construction, "qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote." *White v. Cnty. of Sacramento*, 646 P.2d 191, 193 (Cal. 1982).

129, 139 n.6 (Ct. App. 2014). Accordingly, under a natural reading of the policy, forgery coverage only extends over the forgery of a financial instrument.

Here, the emails instructing T&L to wire money were not financial instruments, like checks, drafts, or the like.[3] *See Vons Cos., Inc. v. Fed. Ins. Co.*, 57 F. Supp. 2d 933, 945 (C.D. Cal. 1998) (holding that wire instructions, invoices, and purchase orders were not "documents of the same type and effect as checks and drafts."). And even if the emails were considered equivalent to checks or drafts, they were not "made, drawn by, or drawn upon" T&L, the insured. Rather, they simply directed T&L to wire money from T&L's client's account. In sum, there is no forgery coverage.

**2. There is no computer fraud coverage.** T&L also argues that the computer fraud coverage applies because the emails constituted an unauthorized (1) "entry into" its computer system, and (2) "introduction of instructions" that "propogate[d] themselves" through its computer system. These arguments are not well-taken.

First, there is no support for T&L's contention that sending an email, without more, constitutes an unauthorized entry into the recipient's computer system. *See, e.g.*, *Intel Corp. v. Hamidi*, 71 P.3d 296, 304 (Cal. 2003) (holding

[3] Under the policy, financial instruments include "checks, drafts or similar written promises, orders or directions to pay a sum certain in money, that are made, drawn by or drawn upon" an insured, its agent, "or that are purported to have been so made or drawn."

that the "mere sending" of emails does not amount to actionable trespass to a computer system in the absence of "some actual or threatened interference with the computers' functioning"); *see also Spam Arrest, LLC v. Replacements, Ltd.*, No. C12-481RAJ, 2013 WL 4675919, at *20 (W.D. Wash. Aug. 29, 2013) ("[N]o Ninth Circuit court has ever held that the mere act of sending an email constitutes access to a computer through which the email passes on the way to its recipient.").

Second, the emails were not an unauthorized introduction of instructions that propagated themselves through T&L's computer system. The emails instructed T&L to effectuate certain wire transfers. However, under a common sense reading of the policy, these are not the type of instructions that the policy was designed to cover, like the introduction of malicious computer code. *See Emp'rs Reinsurance Co. v. Superior Court*, 74 Cal. Rptr. 3d 733, 744 (Ct. App. 2008) ("We interpret words in accordance with their ordinary and popular sense, unless the words are used in a technical sense or a special meaning is given to them by usage."). Additionally, the instructions did not, as in the case of a virus, propagate themselves throughout T&L's computer system; rather, they were simply part of the text of three emails.

Accordingly, under the plain meaning of the policy, the computer fraud coverage does not apply.

**3. There is no funds transfer fraud coverage.** Lastly, T&L is not entitled to funds transfer fraud coverage. Fraud transfer fraud encompasses:

> fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by an **Insured Organization** at such Institution, without an **Insured Organization's** knowledge or consent.

This coverage is inapplicable because T&L requested and knew about the wire transfers. After receiving the fraudulent emails, T&L directed its client's bank to wire the funds. T&L then sent emails confirming the transfers to its client's email address. Although T&L did not know that the emailed instructions were fraudulent, it did know about the wire transfers.

Moreover, T&L's receipt of the emails from its client's account does not trigger coverage because T&L is not a financial institution.[4] *See First Am. Title Ins. Co. v. XWarehouse Lending Corp.*, 98 Cal. Rptr. 3d 801, 808 (Ct. App. 2009) ("[C]ourts will not indulge in a forced construction" where "the terms of a policy are plain.").

In sum, there is no funds transfer coverage.

**AFFIRMED.**

---

[4] Further, contrary to T&L's argument, the policy provides no indication that the parties intended to adopt 31 U.S.C. § 5312(a)(2)'s broad definition of a "financial institution," which includes—among other things—pawnbrokers, travel agencies, and dealers in precious stones.